# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REGINALD WARD, | ) |
|       Petitioner, | ) ) ) |
| v. | )   Case No. 16-CV-602-JHP-PJC ) |
| JOE ALLBAUGH, Director, | ) ) |
|       Respondent. | ) |

## OPINION AND ORDER

Before the Court is Petitioner Reginald Ward's habeas corpus petition under 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his Tulsa County District Court conviction for first degree murder, Case No. CF-2013-0121. Dkt. 1, Petition, at 1. He argues he was acting in self-defense; his trial was tainted by instructional error and other due process violations; and trial counsel rendered ineffective assistance. He asks the Court to vacate his life sentence and reduce the charge to manslaughter. Respondent contends Petitioner shot the victim in the back as he walked away, and that the trial was otherwise free from constitutional error. For the reasons below, the Court will deny the petition.

**I. Background**

The above-mention shooting occurred on March 17, 2013. Dkt. 12-5, Amended Information in O.R., at 4. Petitioner, his girlfriend, and his friend Michael McConnell went to a family member's home to do laundry. Dkt. 12-3, Tr. Trial vol. II, at 63. For simplicity, the Court will refer to that home as the "Ward Residence." The Ward Residence was across the street, and one lot over, from where victim Alonzo Stewart was staying. Dkt. 12-2, Tr. Trial vol. I, at 138-139. The Court will refer to that home as the "Stewart Residence." The Stewart Residence had

been "shot up," and Stewart previously accused Petitioner of committing that crime. *Id.* at 151, 186-187. Stewart was in his yard on the phone when Petitioner arrived at the Ward Residence to do laundry. *Id.* at 169-170; *see also* Dkt. 12-3, Tr. Trial vol. II, at 79. Petitioner entered the Ward Residence without incident. Dkt. 12-3, Tr. Trial vol. II, at 78. He came back outside after a few minutes, when Stewart was still in his yard. *Id.* at 79. Petitioner and Stewart engaged in a verbal argument, and Petitioner shot Stewart between seven and eleven times. Dkt. 12-3, Tr. Trial vol. II, at 83, 169-170. Stewart, who was unarmed, died in a third party's driveway across from the Ward Residence. *Id.* at 20.

The State charged Petitioner with first-degree murder (malice aforethought) in violation of OKLA. STAT. tit. 21, § 701.7. Dkt. 12-5, Amended Information in O.R., at 4. Petitioner's theory was that he shot Stewart in self-defense and, at most, he committed manslaughter. Dkt. 11-1, App. Brief, at 17-22. The jury received instructions on first degree murder and the lesser charge of manslaughter by heat of passion. Dkt. 12-6, Jury Instructions in O.R., at 64-67. On January 30, 2014, a jury convicted Petitioner of first-degree murder. Dkt. 12-3, Tr. Trial vol. II, at 262. The jury recommended a punishment of life imprisonment, and the state court sentenced Petitioner accordingly. *Id.*

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). Dkt. 11-1, App. Brief, at 1. Appellate counsel raised six propositions of error relating to the sufficiency of the evidence, the self-defense theory, ineffective assistance of trial counsel, and other procedural defects. *Id.* at 3-4. By a Summary Opinion entered January 6, 2015, the OCCA affirmed Petitioner's conviction and sentence. Dkt. 11-3, *State v. Petitioner*, No. CF-2014-127 (Okla. Crim. App. 2015) (unpublished) ("OCCA Op."), at 1. Petitioner then filed a state application for post-

conviction relief, which was denied. Dkt. 11-4, P.C. Application; *see also* Dkt. 11-5, Order Denying Application; Dkt. 11-7, OCCA Order Affirming Denial of Post-Conviction Relief.

Petitioner filed the instant § 2254 Petition (Dkt. 1) on September 21, 2016. He identifies the following grounds for relief:

(Ground 1): The evidence supporting the conviction was insufficient.

(Ground 2): The state court failed to *sua sponte* instruct the jury on the lesser charge of Manslaughter by Resisting Criminal Attempt.

(Ground 3): The state court improperly refused to replay video evidence for the jury.

(Ground 4): The state court responded to a jury question via a written note, rather than on the record, in violation of OKLA. STAT. tit. 22, § 894.

(Ground 5): Trial counsel provided ineffective assistance.

(Ground 6): Cumulative error.

Dkt. 1, Petition, at 5-14; Dkt. 11-1, App. Brief, at 3-4.[1]

Respondent filed a opposition Response (Dkt. 11), along with copies of the state court record (Dkt. 12, 13). Respondent concedes, and the Court finds, that the Petition is timely and Petitioner exhausted his state remedies. *See* 28 U.S.C. § 2244(d)(1); 28 U.S.C. § 2254(b)(1)(A). The matter is ready for a full review on the merits.

**II. Discussion**

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United

---

[1] At Petitioner's request, the Court looked to his state appellate brief (Dkt. 11-1) to discern his claims.

States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[1] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely

---

[1] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

4

because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### A. Sufficiency of the Evidence

In Ground 1, Petitioner claims he was deprived of due process because the State's evidence is insufficient to support a first-degree murder conviction. Dkt. 1 at 5. He contends the State failed to prove he was not acting in self-defense when he shot Stewart. *Id.* At most, he argues the evidence established he was guilty of manslaughter, under either a heat of passion or "imperfect" self-defense theory. *Id.*; *see also* Dkt. 11-1, App. Brief, at 21-22.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id*. The Court looks to state law to determine the substantive elements of the crime, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655.

Petitioner challenges his murder conviction under OKLA. STAT. tit. 21, § 701.7. To obtain this conviction, the State had to show: (1) the unlawful death of a human; (2) caused by the defendant; and (3) with malice aforethought. *See* OKLA. CRIM. JURY INSTRUCTION NO. 4-61; OKLA. STAT. tit. 21, § 701.7(A). Self-defense can negate the first and/or third elements if "a reasonable person in [the defendant's] circumstances and from his viewpoint would reasonably have believed he was in imminent danger of death or great bodily harm." *Mack v. State*, 428 P.3d 326, 327-328 (Okla. Crim. App. 2018). If self-defense does not negate liability entirely, a homicide may qualify as "manslaughter in the first degree when perpetrated without a design to effect death, and in a heat of passion, … by means of a dangerous weapon." *Tryon v. State*, 423 P.3d 617, 638 (Okla. Crim. App. 2018) (quoting OKLA. STAT. tit. 21, § 711(2)).

The OCCA considered and rejected Petitioner's arguments regarding self-defense and

manslaughter. Although the opinion does not cite *Jackson v. Virginia*, 443 U.S. 307, 316 (1979), the analysis is consistent with that case. The OCCA noted:

> Reviewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found [Petitioner] was not acting in self defense and further found each of the elements of Murder in the First Degree beyond a reasonable doubt.

Dkt. 11-3, OCCA Op., at 2.

In light of the deferential standard under § 2254, the Court agrees. Petitioner's friend McConnell testified that, on the day of the shooting, Stewart was on a phone call in his yard when he observed Petitioner outside. Dkt. 12-3, Tr. Trial vol. II, at 79. Stewart started an argument with Petitioner, although McConnell admitted both Petitioner and Stewart were "talking crap." *Id.* at 69. Stewart's wife - who was on the phone with him during the entire incident - recalled hearing one of the men refer to a gun. Dkt. 12-2, Tr. Trial vol. I, at 140. She then heard Stewart say "I see those every day, all day." *Id.* Stewart's sister, who came outside after she heard yelling, gave similar testimony. She heard Stewart say: "I don't care about your four-five, I see those all day long, I'm telling you, it's done, I don't want to deal with this anymore." Dkt. 12-2, Tr. Trial vol. I, at 187. She testified Stewart then turned his back on Petitioner to walk away. *Id.* at 173, 187. This testimony is consistent with McConnell's initial statement to police that "somehow [Stewart] tries to walk back, I think he was calming down." Dkt. 12-3, Tr. Trial vol. II, at 69.[2]

There is also evidence that Petitioner shot Stewart in the back as he walked away and continued shooting at close range to ensure a fatality. Stewart's sister testified that after Stewart began walking away, she heard two pops and saw Stewart facing her (and away from Petitioner).

---

[2] Although McConnell's testimony later changed, the original initial statement was introduced as impeachment testimony. *Id.*

Dkt. 12-2, Tr. Trial vol. I, at 174-176.  She recalled that Stewart had his hands in the air, with gritted teeth and wide open eyes.  *Id.*  She further testified that when Stewart fell to the ground in a driveway, Petitioner crossed the street and shot him several more times while he lay on the ground.  *Id.*  The record also reflects McConnell initially told police: "after the first few shots, [Stewart] went down," and McConnell then saw Petitioner "point [the gun] down and shoot [Stewart]."  Dkt. 12-3, Tr. Trial vol. II, at 71.  This testimony is consistent with bullets found in the driveway under Stewart's body.  *Id.* at 98-101.  Police determined Stewart was unarmed and that he sustained between seven and eleven bullet wounds.  *Id.* at 172-173.

Notwithstanding these facts, Petitioner argues the verdict was unreasonable because contradictory evidence exists in the record.  Dkt. 11-1, App. Brief, at 19.  He points to McConnell's testimony that: (a) Stewart threatened to kill Petitioner; and (b) Petitioner shot Stewart while he was advancing towards Petitioner with his hand in his pants, clutching what looked like a gun.  *Id.*  Stewart's wife, who was on the phone, also testified that at one point she heard what sounded like wind or a wrestling match, indicating there could have been a physical fight.  *Id.*  Petitioner also points out the physical evidence was inconclusive as to when and how Stewart sustained gunshot wounds to his back, and how Stewart fell to the ground in the driveway.  *Id.*  These facts, according to Petitioner, would demonstrate he acted in self-defense or, alternatively, he committed manslaughter under an imperfect self-defense or heat-of-passion theory.

The Supreme Court "unambiguously instructs that a reviewing court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quotations omitted).  In

8

this case, the jury chose to believe Stewart's sister rather than McConnell. Her testimony demonstrated Petitioner was not acting in self-defense and intended to "effect death" when he shot Stewart. *See Tryon,* 423 P.3d at 638 (heat of passion manslaughter is only available when the defendant acted "without a design to effect death"). Highlighting inconsistencies in the evidence merely shows why a "juror *might not* accept [her] testimony; it doesn't show that a rational juror *could not* accept it, which is the question on which a sufficiency challenge necessarily must focus." *Matthews v. Workman*, 577 F.3d 1175, 1185 (10th Cir. 2009). *See also United States v. Cardinas Garcia*, 596 F.3d 788, 794 (10th Cir. 2010) ("[W]e will overturn a jury's credibility determination and disregard a witness's testimony only if the testimony is inherently incredible-that is, only if the events recounted by the witness were impossible under the laws of nature or the witness physically could not have possibly observed the events at issue").

On this record, the Court cannot disturb the OCCA's conclusion that sufficient evidence exists to support Petitioner's first-degree murder conviction. Habeas relief is not available as to Ground 1.

**B. Instructional Error and Corresponding Error by Counsel**

In Ground 2, Petitioner contends the state court failed to *sua sponte* instruct the jury on the lesser charge of Manslaughter by Resisting Criminal Attempt. Dkt. 1, Petition, at 6; *see also* Dkt. 11-1, App. Brief, at 27-28. He argues the trial evidence supported the instruction, which should have been issued based on his theory of self-defense (or imperfect self-defense). *Id.* Ground 5 raises ineffective assistance of counsel based on the failure to request the instruction. Dkt. 1, Petition, at 12; *see also* Dkt. 11-1, App. Brief, at 38-39.

The OCCA rejected both arguments on appeal. It found no plain error "in the trial court's

9

failure to instruct the jury on th[e] lesser offense." Dkt. 11-3, OCCA Op., at 2-3. The OCCA noted:

> In part, [Petitioner] urges us to adopt the position that Manslaughter by Resisting Criminal Attempt encompasses 'imperfect self-defense,' and further adopt a bright-line rule that a trial court must always instruct the jury on this lesser offense where a defendant claims self-defense to a charge of Murder in the First Degree. We [have] rejected such an inflexible approach … in favor of a case-by-case analysis that focuses on whether the evidence was sufficient to warrant an instruction on the lesser included offense…. The proper inquiry is whether *prima facie* evidence of the lesser offense was presented. … Sufficient evidence to warrant a lesser included offense is evidence which would allow a jury rationally to find the accused guilty of the lesser offense and acquit him of the greater …We find … the evidence presented at trial would not permit a rational jury to acquit [Petitioner] of Murder in the First Degree in favor of finding him guilty of the lesser offense.

*Id.* Because the OCCA found no instructional error, it determined Petitioner "cannot show resulting prejudice" to support an ineffective assistance of counsel claim. *Id.* at 6.

1. Ground 2: Instructional Error

Federal habeas courts have a limited role in evaluating jury instructions. Relief is only available if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990) (quotations omitted). Petitioner's burden under this test is "greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question is not whether the instruction[s] [were] undesirable, erroneous, or even universally condemned, but whether the instruction[s] so infected the trial that the resulting conviction violates due process." *Maes v. Thomas,* 46 F.3d 979, 984 (10th Cir. 1995) (quotations omitted). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (quotations omitted). Further, where the

petitioner relies on the omission of instructions rather than the provision of an erroneous instruction, the burden is especially heightened. *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999). "[A]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* (quoting *Maes,* 46 F.3d at 984) (remaining citations omitted).

The omitted instruction at issue Oklahoma Uniform Instruction No. 4-102, which establishes the manslaughter elements as follows:

> First, the death of a human;
> Second, perpetrated unnecessarily (while resisting an attempt by the deceased to commit a crime) / (after an attempt by the deceased to commit a crime had failed);
> Third, perpetrated by the defendant(s).

OKLA. CRIM. JURY INSTRUCTION NO. 4-102 OUJI-CR (2d).

Having reviewed the record, the Court finds Petitioner received a fair trial despite the absence of that instruction. It is not clear Stewart committed any crime, or that he even made contact with Petitioner before the shooting. At most, it appears Stewart walked towards Petitioner with his hand in his pants. Dkt. 11-1, App. Brief, at 10. To the extent Stewart made verbal threats, words alone are not adequate provocation to justify a homicide. *See Tryon v. State,* 423 P.3d 617, 639 (Okla. Crim. App. 2018). The Court therefore agrees with the OCCA that the evidence did not mandate the instruction.

Even if the Court concluded otherwise, the absence of Instruction No. 4-102 would not amount to a due process violation. Under federal law, Oklahoma state courts need not instruct juries on the charge of Manslaughter by Resisting a Criminal Attempt where, as here, the court issued a heat-of-passion manslaughter instruction. *See Bland v. Sirmons,* 459 F.3d 999 (10th Cir. 2006). *Bland* is nearly identical to the instant case. The habeas petitioner there argued he killed the victim to prevent an assault, but there was conflicting evidence that he shot the victim in the

11

back of the head. *Id.* at 1016. The habeas petitioner argued the state court should have issued both manslaughter instructions (heat of passion and resisting criminal attempt) based on his own testimony about the victim's attempted assault. *Id.* In denying habeas relief, the Tenth Circuit noted the state court "instruct[ed] the jury on one lesser included offense supported by the evidence, even if instructions on other lesser included offenses might have been warranted." *Id.* The jury here received the heat of passion manslaughter instruction, and was not "forced into an all-or-nothing choice between … murder and innocence." *Id.* Accordingly, this Court concludes Petitioner received a fair trial in the absence of an instruction on Manslaughter by Resisting Criminal Attempt. Habeas relief is unavailable on Ground 2.

   2. Ground 5: Ineffective Assistance of Counsel

Petitioner also argues that trial counsel was ineffective for failing to request the second manslaughter instruction. Dkt. 1, Petition, at 12; *see also* Dkt. 11-1, App. Brief, at 38-39. The OCCA rejected this claim under the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. 466 U.S. at 687. To satisfy the second prong, the "defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Standing alone, the *Strickland* standard is "highly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). Under § 2254(d)(1), this Court's review of whether the OCCA unreasonably applied *Strickland* is "doubly deferential." *Id.* at 123.

Applying double deference, the the OCCA ruling is not unreasonable. As discussed above, there was insufficient evidence to warrant Instruction No. 4-102, and the jury had a manslaughter

option available, if they wished to convict Petitioner of a lesser charge. *See* Supra, Section 1. Petitioner therefore cannot establish prejudice stemming from counsel's failure to request Instruction No. 4-102, and Ground 5 fails.

### C. Error in Handling the Jury

In Ground 3, Petitioner raises a due process violation based on the jurors' inability to re-watch videotaped police interviews featuring Petitioner and McConnell. Dkt. 1, Petition, at 8; *see also* Dkt. 11-1, App. Brief, at 33. The jurors requested a television and DVD player to re-watch the videos, but the state court instructed them to rely on their "own recollection of those events" because the DVDs contained "other matters upon them which [were] not properly before [the jury]." Dkt. 11-1, App. Brief, at 33-34. However, Petitioner notes the prosecutor urged the jurors to re-watch the video in closing, and argues the outcome might have been different had the state court granted the jury's request. *Id.* Ground 4 raises a related claim. Petitioner contends that in denying the jury's request, the state court failed to return to open court as required by OKLA. STAT. tit. 22, § 894. *Id.* at 36. Petitioner further argues the state court sent a note referring the jurors back to the instructions when they asked about the minimum and maximum sentence for manslaughter. *Id.*

The above arguments were considered and rejected on appeal. Dkt. 11-3, OCCA Op. The OCCA noted that under Oklahoma law, courts have discretion in allowing juries to review video interviews. *Id.* at 4. The OCCA then concluded that the "trial's court's decision was neither an unreasonable or arbitrary action … nor one which was clearly erroneous." *Id.* To resolve Ground 4, the OCCA analyzed OKLA. STAT. tit. 22, § 894, which provides:

> After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the

cause, they must require the officer to conduct them into court. Upon [entering] … court, the information required must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called.

*Id.* at 4-5 (quoting OKLA. STAT. tit. 22, § 894). Because the DVD request "did not pertain to a disagreement as to any part of the testimony," the OCCA concluded Section 894 had "no application" and could not provide the basis for any error. With respect to the question concerning sentencing ranges, the OCCA determined it was harmless to direct the jurors back to their instructions. *Id.* at 4, n. 1.

The OCCA's decision was based entirely on state law principles. Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id*. at 68. Therefore, to challenge an evidentiary ruling or other discretionary decision on due process principles, the petitioner must show that "because of the court's actions, his trial, as a whole, was rendered fundamentally unfair." *Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir.1995) (quotations omitted). As noted above, habeas courts must "approach the fundamental fairness analysis with considerable self-restraint." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir.1998). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973).

Nothing in the record demonstrates Petitioner's trial was fundamentally unfair. As the state court correctly noted, only a portion of Petitioner's taped police interview was admitted into evidence. Dkt. 12-3, Tr. Trial vol. II, at 139-140. Granting the jurors unfettered access to the DVDs, as they requested, would likely have been inappropriate. Moreover, as one federal court

14

pointed out, there is no Supreme Court precedent that requires juries to have unfettered access to video evidence during deliberations. *See Parlin v. Holmes,* 2015 WL 3448194, at *4 (D.N.J. May 29, 2015) (rejecting a similar claim and noting relief is only available under § 2254 based on an unreasonable application of clearly established Supreme Court law).

It is also not clear that the taped interviews were particularly helpful to Petitioner's defense. For example, in closing argument the prosecutor invited the jurors to re-watch Petitioner's explanation as to why he did not retreat from Stewart if Petitioner feared for his safety:

> Is he really scared? Easy answer, because he answers it himself in his interview, and you have that interview as evidence…. The defendant is asked, and I quote, 'why aren't you backing up yourself?' And his response: 'Because I have a gun myself, I'm trying to explain to that man, I'm not scared of you, I've got a son that's going to be born, I'm not running.' Self defense? He just now told you he's not scared. …

Dkt. 12-3, Tr. Trial vol. II, at 233. The police interviews also contained some of the more damning evidence by McConnell. Although McConnell's trial testimony was very favorable for Petitioner, McConnell admitted in the police interview that Stewart tried to walk "back," (*i.e.,* away), and that Petitioner continued to shoot Stewart after he fell to the ground. *Id.* at 69-71 (statements used for impeachment). On this record, the Court cannot disturb the OCCA's ruling regarding the jury's DVD request, and Ground 3 fails.

Similarly, habeas relief is not warranted based on the state court's written responses to the jury's inquiries. Federal law does not incorporate OKLA. STAT. tit. 22, § 894 or otherwise require all jury communications to take place on the record. In the Court's experience, it is common for the jury to inquire about the evidence, punishment, or legal standards in a case. More often than not, courts refer the jury back to their instructions, as the state court did here. *See, e.g., United States v. Frias,* 893 F.3d 1268, 1275 (10th Cir.), cert. denied, 139 S. Ct. 466 (2018) (finding no

15

abuse of discretion based on the "district court's decision to refer the jury back to the instructions"). The state court's written responses did not fundamentally taint the trial, and habeas relief is unavailable on Ground 4.

   **D. Cumulative Error**

In Ground 6, Petitioner alleges the cumulative effect of the trial errors alleged in Ground 1-5 deprived him of a fair trial. Dkt. 1, Petition, at 14; *see also* Dkt. 11-1, App. Brief, at 38. Finding no errors to accumulate, the OCCA rejected this claim. Dkt. 11-3, OCCA Op., 6.

"[I]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010) (quotations omitted). A cumulative-error analysis is warranted "only if there are at least two errors." *Lott v. Trammell*, 705 F.3d 1167, 1223 (10th Cir. 2013) (quoting *Hooks v. Workman*, 689 F.3d 1148, 1194-95 (10th Cir. 2012)). The Court considers prejudice that has already been assessed in denying claims, such as claims of ineffective assistance of counsel that incorporate a prejudice component in determining whether a right has been violated. *See Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003). Relief is only available when the errors had an "inherent synergistic effect" on the outcome. *Id.* at 1121.

Like the OCCA, the Court has not found two or more harmless constitutional errors, nor is the Court convinced any alleged error had a synergistic effect on the jury's verdict. The Court therefore denies habeas relief Ground 6.

Based on the foregoing, the Court concludes Petitioner's conviction does not violate federal law. *See* 28 U.S.C. § 2254(a). The Petition must therefore be denied.

### III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds reasonable minds could not differ as to the outcome of this case. The Court will therefore deny a certificate of appealability on all claims.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment will be entered herewith.

ORDERED this 10th day of June, 2019.

James H. Payne
United States District Judge
Northern District of Oklahoma